UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT K.,[1]                                                     Case No. 1:20-cv-843

       Plaintiff,                                       Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert K filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. The Commissioner's finding of non-disability will be AFFIRMED because it is supported by substantial evidence in the record as a whole.[2]

**I. Summary of Administrative Record**

Plaintiff applied for Disability Insurance Benefits (DIB) in June 2015, alleging disability beginning December 20, 2014, due to physical impairments. (Tr. 165, 428-429). After his claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared and testified at a hearing in November 2017 with his representative. (Tr. 41- 86). Following the hearing, the ALJ issued a decision on April 19, 2018, denying Plaintiff's Title II DIB

---

[1]The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.
[2]The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

1

claim because he had not shown that he became disabled between his alleged onset date, February 15, 2015, and his date last insured, March 31, 2016. (Tr. 204). Thereafter, Plaintiff requested Appeals Council review of the ALJ's decision. (Tr. 304-307). On March 13, 2019, the Appeals Council granted Plaintiff's request for review. (Tr. 313).

The Appeals Council stated that it planned to issue a new decision adopting the ALJ's findings and conclusions that Plaintiff was not disabled, but also would be correcting two errors of law. (Tr. 314). First, the Appeals Council noted that the ALJ had relied on evidence that was scanned to Plaintiff's electronic claim folder but not exhibited in the certified administrative record. (Tr. 314). Accordingly, the Appeals Council planned to add those records to the exhibit list. (Tr. 314). Second, the Appeals Council noted that the ALJ had decided Plaintiff's claim through March 31, 2016, but that Plaintiff had subsequently earned an additional quarter of disability insurance coverage, which changed his date last insured to June 30, 2016, so the Appeals Council planned to rule through the corrected June 30, 2016 date last insured. (Tr. 314).

Before the Appeals Council issued a final decision, Plaintiff requested another hearing before an ALJ. (See Tr. 317). A second hearing, at which Plaintiff again appeared with his representative, was held on November 6, 2019. (Tr. 41-86). At that hearing, Plaintiff's counsel for the first time asked the ALJ if the ALJ decided that Plaintiff would not be entitled to DIB, "then wouldn't he potentially be entitled to SSI benefits?" (Tr. 69). The ALJ said no, and stated that Plaintiff did not apply for SSI benefits, and that the issue of whether Plaintiff was entitled to SSI benefits was not before him. (Tr. 69). After the November 2019 hearing, the ALJ issued a decision on December 12, 2019, finding Plaintiff not disabled from his February 15, 2015 alleged onset date through June 30,

2

2016, his date last insured. (Tr. 9-34). Plaintiff sought the Appeals Council's review of the ALJ's decision and argued, among other things, that the ALJ should have considered his eligibility for SSI benefits. (Tr. 374-81). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

Plaintiff was 41 years old on his alleged date of disability. He has an 11th grade education. He has past relevant work as a mechanic. He alleges disability due to epilepsy, neuropathy, COPD, seizures, morbid obesity, arthritis, sleep apnea, and heart problems.

The ALJ determined that Plaintiff has severe impairments of "hypertension; osteoarthritis; morbid obesity; borderline intellectual functioning; bilateral leg neuropathy; diabetes mellitus, type II; COPD; obstructive sleep apnea; and heart failure. (Tr. 15). Although Plaintiff argued at the hearing that his impairments were of listing level severity, the ALJ found that none of the impairments, alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appx. 1, such that Plaintiff would be entitled to a presumption of disability. (*Id*.)

The ALJ determined that Plaintiff could perform a range light work, subject to the following:

> He is able to lift and carry up to 20 pounds occasionally and ten pounds frequently. He is able to engage in work that can be performed whether sitting or standing and remain on task with the ability to stand and/or walk for six hours per eight-hour day, walk 200 feet at a time, and sit for six hours per eight-hour day, one hour at a time, then stand for two to three minutes to relieve discomfort before returning to a seated position. He requires the use of a cane to go to and from the workstation while carrying objects in the free hand. He is able to climb ramps and stairs occasionally, but never climb ladders, ropes and scaffolds. He is able to occasionally stoop, kneel, crouch, and crawl. He is able to perform no more than frequent fingering and handling bilaterally. He is able to perform work with no operation of foot controls. He must avoid concentrated exposure to extreme cold,

> extreme heat, wetness, humidity, vibration, fumes, dust and poorly ventilated areas. He must avoid all exposure to hazards such as dangerous heavy moving machinery, open bodies of water, and unprotected heights. He can understand, remember, and carry out short, simple instructions to complete short cycle, repetitive tasks that can be learned by demonstration maintaining attention and concentration for two hours at a time in an eight-hour workday. He is able to work at a pace to complete simple work tasks. He is able to make simple work-related decisions related to basic work functions. He is capable of superficial occasional interactions with the public, co-workers, and supervisors, such that any interpersonal interact ion would be incidental to the work being performed and would be working with things rather than people. He is able to be aware of normal hazards and take appropriate precautions. He is able to travel independently. Due to medical conditions, symptoms, pain, and stand for 2-3 minutes to relieve discomfort, he would be off-task four percent of the work period, which means he is able to remain on task 96% of the work period.

(Tr. 19).

Based upon the RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including printed circuit board touchup screener, table worker, gauger, and visual inspector. (Tr. 32). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 34). Plaintiff urges this Court to reverse, arguing that ALJ erred by: (1) failing to consider Plaintiff's application for disability benefits as one for SSI benefits as well as DIB benefits (2) failing to give controlling weight to the findings of Plaintiff's treating physician; and (3) failing to include the use of a walker in the hypothetical question to the vocation expert. The Court finds no reversible error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or

4

mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

5

impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is Substantially Supported**

*1. Plaintiff's Application for Disability*

Plaintiff argues first that the ALJ erred by not treating his DIB application as a simultaneous SSI application. Plaintiff's contention is unavailing.

Here, Plaintiff asserts that Agency regulations provide that "an application is a claim for benefits" and therefore his application should have been considered for DIB and SSI. Plaintiff also cites the Program Operation Manual System (POMS)5 GN 00204.020 for the proposition that "[u]nless a claimant restricts the scope of his or her application, the application will generally cover all classes of benefits on all Social Security numbers (SSN), for which the claimant is eligible, regardless of the application's title." (Doc. 11, pp

6-7. Plaintiff appears to assert that, unless he told the agency that he did not want to apply for SSI benefits his DIB application must stand as an application for those benefits.

However, as noted by the Commissioner, the regulations also require that a claimant actually file a claim for SSI benefits to be eligible for those benefits. See 20 C.F.R. § 416.305(a) ("[Y]ou must file an application to become eligible to receive benefits."). The regulations further show that DIB and SSI are separate benefits that generally require separate applications. See id. ("When a person applies for benefits under title II (retirement, survivors, or disability benefits) we will explain the requirements for receiving SSI benefits and give the person a chance to file an application for them if" certain requirements are met) (emphasis added). Plaintiff points to no regulation that suggests that his DIB application also automatically stood as an application for SSI, especially when he affirmed to the agency at the time of his application that it was not. (Tr. 428).

More importantly, Plaintiff's DIB application affirmatively states: "I do not want to file for SSI." (Tr. 428). Thus, as detailed by the Commissioner, nothing in the record suggests that Plaintiff intended to apply for SSI at the time that he filed his DIB application, and nothing in the agency regulations or guidance he cites suggests that the agency (or the ALJ) erred by treating his application as an application for DIB but not SSI. Accordingly, the ALJ did not err in this regard.

*2. Weight assigned to Dr. Mehta*

Plaintiff's second assignment of error asserts that the ALJ erred by failing to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Mehta. Plaintiff's contentions lack merit.

In April 2019, Dr. Mehta completed a Physical Residual Functional Capacity Assessment, wherein he opined that Plaintiff could frequently lift up to 10 pounds; could stand and/or walk for less than 2 hours in an 8-hour workday; could sit for less than 6 hours in an8 -hour workday; was limited in pushing and pulling with his upper extremities; and was limited in reaching in all directions, handling, fingering, and feeling. (Tr. 1254).

At the time of Plaintiff's application, the regulations and controlling law provided that when evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Moreover, in evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion;

8

and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)). Here, in formulating Plaintiff's RFC, the ALJ gave little weight to Dr. Mehta's findings. As explained below, the undersigned finds that ALJ's decision in this regard is substantially supported.

First, the ALJ noted that that Dr. Mehta had cited no evidence to support her opinions. Namely, other than noting that Plaintiff's upper extremity limitations were due to COPD and shortness of breath, Dr. Mehta provided no explanation for the restrictions in her April 2019 opinion. (See Tr. 1254-59).

The ALJ also explained that the opinion was not entirely consistent with Plaintiff's testimony regarding his activities and abilities, including his ability to hold a cane in his hand. (Tr. 30, 106). The ALJ also considered Plaintiff's testimony that he could cook simple meals, like hamburgers and chicken, and perform some household chores, including sweeping, mopping, washing dishes, doing laundry, and using a riding lawn mower. (Tr. 29, 30, 111-12).

Additionally, contrary to Dr. Mehta's opinion, the ALJ noted that Plaintiff testified in 2017 that he could lift 15 pounds. (Tr. 29, 113). He was able to attend church on Wednesdays and Sundays, go out to lunch, and dress himself. (Tr. 29, 30, 113, 116-17). He could walk from his car in the parking garage through the lobby to the elevator bank in the Social Security building to get to his hearing. (Tr. 29, 30, 119-20). The ALJ noted that these activities required some degree of stooping, balancing, and crouching, all postural activities that Dr. Mehta's opinion indicated Plaintiff was incapable of performing. (Tr. 29, 30). The ALJ also noted multiple instances in the record in which Plaintiff's gait was normal, with no assistive device noted. (See Tr. 23). The ALJ further considered that

9

Dr. Mehta's opinion was completed well after the date last insured of June 20, 2016. (Tr. 30).

In light of the foregoing, the ALJ's reasoning for assigning little weight to Dr. Mehta's opinion is supported by Agency regulations and controlling law. See 20 C.F.R. § 404.1527(c)(3) (the more a medical source presents relevant evidence to support a medical opinion, the more weight the agency will give that opinion). 20 C.F.R. § 404.1527(c)(4) (the more consistent an opinion is with the other evidence of record, the more weight it will be given). *Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1233 (6th Cir. 1993) (post-date last insured evidence is "outside the scope of our inquiry."). Accordingly, the ALJ's decision to afford little weight to Dr. Mehta's findings is supported by substantial evidence and should not be disturbed.

*3. Use of a Walker*

Plaintiff's final assignment of error asserts that the decision is not substantially supported because the ALJ failed to adopt the testimony of the vocational expert regarding the use of a cane or walker. Plaintiff's contention is unavailing.

Here, at the November 2017 hearing, the vocational expert testified that use of a walker would preclude unskilled sedentary work due to the need to carry things occasionally. (Tr. 142-43). However, the ALJ's RFC determination did not include the use of a cane or walker. In making this determination, the ALJ acknowledged Dr. Mehta's September 28, 2017, progress note, in which she wrote down both "cane" and "walker," but pointed out that the treatment note was ambiguous as to which one Plaintiff was using at that time. (Tr. 29, citing Tr. 1039). The ALJ also described several treatment notes in which Plaintiff's gait was observed to be normal. (Tr. 21, citing Tr. 1101-02, 1111-12,

1120, 1124; Tr. 23, citing Tr. 1101-02; Tr. 23-24, citing Tr. 1111-12; Tr. 24, citing Tr. 1120, 1129; Tr. 30, citing Tr. 1314).

Additionally, the ALJ considered Plaintiff's testimony that he used the cane to get out of his house and to get to his car, as well as to go through narrow spaces. (Tr. 20). The ALJ also considered Plaintiff's testimony that he could lift and carry 15 pounds which contradicted his claims that he required a walker because, as the vocational expert testimony to which Plaintiff refers stated, use of a walker is inconsistent with the ability to carry things. (Tr. 21). Thus, as noted by the Commissioner, the ALJ discussed substantial evidence supporting the determination not to include use of a walker as a limitation in the RFC.

### III. Conclusion and Order

For the reasons stated, the ALJ's assessment of the evidence and formulation of Plaintiff's RFC in this case are substantially supported. Accordingly, **IT IS ORDERED THAT** the decision of the Commissioner to deny Plaintiff DIB benefits is **AFFIRMED** because it is supported by substantial evidence in the record as a whole.

                                                                          *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge